**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

JAMES W. JOHNSON
ADC#086885 PETITIONER

VS. 5:14CV00176 DPM/JTR

WENDY KELLEY, Director,
Arkansas Department of Correction[1] RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D. P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

Mail any objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

[1] Wendy Kelley became Director of the Arkansas Department of Correction on January 13, 2015, and is automatically substituted as Respondent pursuant to Fed. R. Civ. P. 25(d).

## I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, James W. Johnson ("Johnson"). *Doc. 2*. Before addressing Johnson's habeas claims, the Court will review the procedural history of the case in state court.

On May 24, 1990, a Pulaski County jury convicted Johnson of two counts of delivery of a controlled substance. *See generally Johnson v. Norris*, 2008 WL 4694544, *1 (Ark. Oct 23, 2008) (unpublished *per curiam*) (discussing procedural history). He received an aggregate 40-year sentence as a habitual offender. *Id.*

On September 26, 2013, Johnson was paroled from the ADC. *Doc. 9-2 at 1*. On October 21, 2013, Johnson was charged in a Violation Report with violating his conditions of parole:

> On or about 10/12/13, Johnson committed the offenses of Terroristic Act and Domestic Battery 3rd Degree in Little Rock, Arkansas.
> Brief narrative:
> While intoxicated, Johnson was in an altercation with his girlfriend, Teresa Taylor when he shot at her vehicle and struck Ms. Taylor in the face with his fist.
> Therefore, I am requesting a Technical Warrant be issued.

*Doc. 9-2 at 2.*[2]

[2] The Arkansas Parole Board ("Parole Board") has jurisdiction over parolees. Ark. Code Ann. § 16-93-206(b) (Supp. 2013). Generally, a parole revocation proceeding is initiated with a Violation Report and the issuance of a warrant for the parolee's arrest. *See* Ark. Code Ann. § 16-93-705 (Supp. 2013); Ark. Parole Bd. Policy Manual § 3.2 (Rev. 2014). The parolee then appears before an administrative Parole Revocation Judge for a Revocation Hearing. *Id.*; *see also* Ark. Parole Bd. Policy Manual § 3.9 (Rev. 2014). The parolee may appeal the decision of the Parole Revocation Judge to the Parole Board. Ark. Parole Bd. Policy Manual § 3.10 (Rev. 2014).

On November 21, 2013, Johnson appeared *pro se* for his Revocation Hearing. *Doc. 9-5*. At the hearing, the parole officer informed the Parole Revocation Judge that the charge and factual narrative listed in the Violation Report was incorrect, and pertained to another parolee's conduct, not Johnson's. *Doc. 9-6 at ¶2.*

The parole officer "withdrew" the incorrect charge and stated that the correct charge against Johnson was for third-degree domestic battery against his wife, Ms. Bobbie Johnson.[3] *Doc. 9-6 at ¶2*. Johnson did not object to proceeding on the new charge concerning his wife. *Doc. 9-6 at ¶2*.

According to the Revocation Hearing Judge's November 21, 2013 Hearing Report, Little Rock Police Officer Cremmens testified that:

> [O]n August 12, 2013[[4]] he was dispatched to an assault at the residence of James Johnson. When he made contact he found Mr. Johnson in bed. His wife Bobbie Johnson reported that her husband threw a box fan at her and hit her arm. The box fan was in the bedroom but it did not look like it had been tampered with. Mr. Johnson's arm[[5]] was freshly swollen. She said she blocked the fan with her arm. Pamela Nelson was on the couch. She reported that

[3] Various documents in the record refer to James Johnson's wife as Bobbie Johnson, Bobbie Hambrick, or Bobbie Hambrick-Johnson.

[4] The parties agree that the incident between Johnson and his wife occurred on October 12, 2013. However, Officer Cremmens testified that it occurred on *August 12, 2013*. The Revocation Hearing Judge states that Officer Cremmens "testified incorrectly that he was dispatched on August 12, 2013 to the assault at Mr. Johnson's residence." *Doc. 9-6 at ¶2*. In fact, Johnson was still in ADC custody on August 12, 2013. *Id.* The Revocation Hearing Judge also points out that "Officer Cremmens was not asked any question by [the parole officer] or [Johnson] regarding the discrepancy in the date [of the incident]." The Revocation Hearing Judge does not explain why *she* did not ask any questions to resolve this obvious discrepancy.

[5] According to the Revocation Hearing Judge's hearing report, Officer Cremmens testified that "*Mr.* [James] Johnson's" arm was injured. In context with the other testimony, this appears to be a mistake and is intended to be a reference to "*Ms.* [Bobbie] Johnson's" arm.

> James Johnson was yelling and throwing things from the next room. Everyone was under the influence of alcohol.

*Doc. 9-5 at 1*. Johnson testified that he did not hurt his wife:

> James Johnson testified that the judge dismissed the Protection Order.[[6]] With regard to the incident, Mr. Johnson testified that they argue for 20 to 30 minutes over different things. Ms. Johnson stepped on the cord and caught her foot in the fan before it tipped over. A neighbor called the police. Her arm was not hurt. Everyone has a knot on their wrist. If he threw the fan there would have been more injuries. He had not been drinking. His wife was leaning on a car and the sharp edge of the car made a mark on her skin. The charges have been upgraded to a felony and have been filed in first division.[[7]]

*Doc. 9-5 at 1*. Johnson also introduced two documents into evidence: (1) "an Order dropping an existing Order of Protection that was signed by the Judge after Mr. Johnson's arrest;" and (2) "a letter purportedly by Ms. Bobbie Johnson that discussed their relationship, written after the incident." *Doc. 9-6 at ¶3*.

The Revocation Hearing Judge "found by a preponderance of the evidence that Mr. Johnson violated the Conditions of his supervised release" and revoked his parole. *Doc. 9-5 at 2*. ADC records indicate that Johnson will discharge his sentence on September 11, 2016. *Doc. 9-2 at 1*.

---

[6] On October 15, 2013, Ms. Bobbie Hambrick-Johnson initiated an "order of protection" action against James Johnson under the Arkansas Domestic Abuse Act. *See Bobbie Hambrick-Johnson v. James Johnson*, Pulaski County Circuit No. 60DR-13-4379 (available online at https://caseinfo.aoc.ar). The case was dismissed on October 29, 2013. *Id.*

[7] On November 6, 2013, Johnson was charged in Pulaski County Circuit Court with felony third-degree domestic battery for the October 12, 2013 incident. *See State v. Johnson,* Pulaski County Circuit No. 60CR-13-3659 (available online at https://caseinfo.aoc.ar). The case was nolle prossed on November 10, 2014, when Ms. Bobbie Johnson did not appear to testify at a bench trial.

On December 18, 2013, Johnson filed a Petition appealing the Parole Revocation Judge's decision to the Parole Board. *Doc. 9-7*. On December 20, 2013, the Parole Board affirmed the decision of the Parole Revocation Judge. *Doc. 9-8*.

On May 2, 2014, Johnson initiated this habeas action. *Doc. 2*. In his Petition, he argues that his Due Process rights were violated because: (1) the parole officer used "false material" to obtain an arrest warrant; (2) he was not notified of the "purpose of the hearing prior to the hearing;" (3) the evidence used against him at the revocation hearing was not disclosed to him prior to the hearing; (4) he was denied the right to call witnesses; and (5) there was insufficient evidence of a parole violation. *Id.* According to Respondent, Wendy Kelley, Johnson's habeas claims are procedurally defaulted. *Doc. 9*.

For the reasons discussed below, the Court recommends that the Petition be denied, and that the case be dismissed, with prejudice.[8]

## II. Discussion

Respondent argues that Johnson's habeas claims are procedurally defaulted because he did not exhaust those claims in state court. A federal habeas petitioner must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts. *Murphy v. King*, 652 F.3d 845, 848–49 (8th Cir. 2011)

[8] Johnson has also filed Motions requesting injunctive relief and summary judgment, which restate his habeas arguments. *Docs. 10 and 12*. The Court recommends that those Motions be denied for the same reasons set forth herein.

(*citing Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). Habeas petitioners procedurally default their habeas claims if: (1) they have not exhausted remedies that were available in state court; and (2) they can no longer return to state court to raise those habeas claims on a timely basis. *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005).

Respondent argues that Johnson should have presented his Due Process claims in circuit court by seeking review of the Parole Board's decision under the Arkansas Administrative Procedures Act ("APA"). *See* Ark. Code Ann. § 25-15-212 (Repl. 2014). In pertinent part, this statute provides as follows:

> In cases of adjudication, any person, except an inmate under sentence to the custody of the Department of Correction, who considers himself or herself injured in his person . . . by final agency action, shall be entitled to judicial review of the action under this subchapter.

Ark. Code Ann. § 25-15-212(a) (Repl. 2014).

Respondent admits that the plain language of this provision *prohibits* ADC inmates from asserting claims for judicial review under the APA. However, she goes on to argue that, in *Clinton v. Bonds*, 306 Ark. 554, 816 S.W.2d 169 (1991), that portion of the statute was held to be unconstitutional because it denied ADC inmates judicial review of federal or state constitutional claims: "we emphasize that Act 709 [codified at Ark. Code Ann. § 25-15-212(a)] unconstitutionally deprives inmates of review of *constitutional* questions because judicial review of

all other administrative questions may be granted, or withheld, according to the Legislature's discretion." *Id.* at 172, 559 (emphasis in original).

Section 2254 habeas claims are, by definition, federal constitutional claims. S*ee* 28 U.S.C. § 2254(a). Thus, the Court's holding in *Clinton v. Bonds* means that those claims first must be fully exhausted in an APA action in state court before they can be pursued in a § 2254 habeas action in federal court.

Following the Court's decision in *Clinton v. Bonds*, courts in the Eastern District of Arkansas have consistently dismissed habeas claims challenging Parole Board decisions where the petitioner failed to pursue timely judicial review under the APA in state court. *See e.g Tucker v. Norris*, 2009 WL 5066761, *3 (E.D. Dec. 16, Ark. 2009) (unpublished) ("Petitioner could have filed a claim raising his constitutional claims under the Administrative Procedures Act in the circuit court within thirty days after he was served the Board's decision denying his request for parole reconsideration dated May 10, 2009. The time has passed for Petitioner to file such an action, and there are no other non-futile state court remedies available to Petitioner."); *Wells v. Burl*, 2014 WL 6892177, *3 (E.D. Ark. Dec. 4, 2014) (unpublished) ("Here, [petitioner] could have sought review of the Parole Board's decision as required by the Arkansas Administrative Procedure Act[.] He did not seek such review and as such, no state court has been afforded an opportunity to consider his matter. Because [petitioner] failed to do so, his claims are

procedurally defaulted."); *Tyler v. Guntharp*, 2010 WL 2330276, *3 (E.D. Ark. May 20, 2010) (unpublished) ("[I]n *Clinton v. Bonds* . . . the Arkansas Supreme Court held unconstitutional the portion of the statute barring inmates from bringing constitutional challenges. As a result, Mr. Tyler could have filed a claim pursuing his constitutional claims in state circuit court within 30 days after he was served with the Arkansas Board of Parole's December 18, 2009, decision. The time for filing such an action has now passed, and there are no other non-futile state court remedies available to Mr. Tyler.").

The Parole Board affirmed the revocation of Johnson's parole on December 20, 2013. *Doc. 9-8*. Under the APA, Johnson had thirty days from service of the Parole Board's decision to file an APA action for judicial review in either Pulaski County Circuit Court or the circuit court in the county where he resided. *See* Ark. Code Ann. § 25-15-212(b)(1) (Repl. 2014). Because he did not, he has procedurally defaulted the habeas claims he now seeks to pursue in this action.

Nonetheless, the Court may still consider the merits of Johnson's procedurally defaulted habeas claims under the narrow "cause and prejudice" or "actual innocence" exceptions to procedural default. *Morgan v. Javois*, 744 F.3d 535, 538 (8th Cir. 2013).[9]

[9] "Cause" requires a showing of some impediment, external to the petitioner's defense and not fairly attributable to him, preventing him from constructing or raising his claims in state court or complying with the state's procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). An external impediment may be shown where "the factual or legal basis for a claim was not reasonably available." *Id.*

As "cause" to excuse his procedural default, Johnson points out that the codified text of Ark. Code Ann. § 25-15-212(a), prohibiting ADC inmates from filing actions for judicial review of agency decisions, has remained unchanged since the Court's decision in *Clinton v. Bonds*. According to Johnson, "who would assume that a law that's been held unconstitutional [would] go unchanged for over 23 years[.]"*Doc. 11 at 5*. Because he is not an attorney, he goes on to argue that he "should not be held to the same standard as one." *Id.*

The Arkansas legislature's decades-long delay in removing the unconstitutional text from the statute is unfortunate.[10] Nonetheless, as a *pro se* litigant, Johnson is still charged with knowing the law relevant to his habeas claims. *See Weeks v. Bowersox*, 106 F.3d 248, 249 (8th Cir. 1997) ("A prisoner's illiteracy and *pro se* status are not cause."). Thus, the "cause and prejudice" exception to procedural default is not applicable in this case.

Finally, Johnson argues that his procedural default should be excused because he is "actually innocent." The merits of a habeas claim may be addressed in order "to prevent a miscarriage of justice, *i.e.*, where the defaulted claim or omitted evidence establishes 'actual innocence' as to the underlying offense[.]" *Wooten v. Norris*, 578 F.3d 767, 777 (8th Cir. 2009). "The Supreme Court has

[10] As early as 1995, United States District Judge G. Thomas Eisele noted that "[t]he Arkansas legislature has apparently not yet amended § 25–15–212(a) so as to bring that statute's language into harmony with the Arkansas Supreme Court's decision in *Clinton v. Bonds*." *Richmond v. Duke*, 909 F. Supp. 626, 628 n.6 (E.D. Ark. 1995).

defined actual innocence in this context very strictly. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Watts v. Norris*, 356 F.3d 937, 941 (8th Cir. 2004) (*quoting Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Johnson must also show that it is more likely than not, in light of the new evidence, no reasonable parole revocation judge would have revoked his parole. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006).

Johnson has submitted an October 21, 2014 notarized Affidavit from his wife, Ms. Bobbie Hambrick. *Doc. 12 at 7*. Ms. Hambrick's Affidavit states as follows:

> Under the penalty of perjury, I lied on the police report about the incident on 10-12-13. My husband James Johnson never harmed me physically that night. We had an argument and I got mad and call[ed] the police. In order for him to go to jail I had to say that I was hurt. I was upset with him [and] I have been to court trying to drop the charges but they said I couldn't. My husband is [innocent]. I'm willing to say that in court.

*Id.* Johnson contends that, had he known the November 21, 2013 parole revocation hearing concerned the October 12, 2013 incident with his wife, "he could have

requested that [his wife] the alleged victim be subpoenaed for the parole hearing to prevent or correct a miscarriage of justice." *Doc. 11 at 5-6.*

Despite the incorrect charge listed on the Violation Report, the evidence in this case establishes that Johnson *actually knew* that the subject of his revocation hearing was the October 12, 2013 incident with his wife. He brought documents to the hearing showing that the "order of protection action" his wife had filed against him had been dismissed. He also brought a letter from his wife to the hearing. Thus, Johnson has not established that his wife's October 21, 2014 Affidavit constitutes "new" evidence that was unavailable at the time of his revocation hearing.

Additionally, the police officer who investigated the October 12, 2013 incident observed an injury on Ms. Johnson's arm that was consistent with her allegation of abuse. In light of the "preponderance of the evidence standard" applicable at a revocation hearing, the Court cannot that say that it is likely that the outcome of the revocation hearing would have been different had Ms. Johnson offered testimony at the revocation hearing consistent with her October 21, 2014 Affidavit, especially since witness recantations from victims of domestic abuse are viewed with suspicion.[11]

[11] *Cf. United States*, 681 F.3d 94, 103 (2nd Cir. 2012) (holding that a district court was entitled to consider that a domestic-abuse victim's letter of recantation following a supervised-release revocation hearing was "not unusual" — "Victims of this type of violence often are protective of, and deny allegations against, their abusers."); *United States v. Farmer*, 567 F.3d 343 (8th Cir. 2009) (holding that the admission of the domestic abuse victim's

For the foregoing reasons, the Court concludes that the "actual innocence" exception to procedural default is not applicable in this case.

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. The Petition for a Writ of Habeas Corpus (*doc. 2*), the Motion for Preliminary Injunction (*doc. 10*), and the Motion for Summary Judgment (*doc. 12*) be DENIED, and this habeas action be DISMISSED, WITH PREJUDICE; and

2. A Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

DATED this 20th day of February, 2015.

UNITED STATES MAGISTRATE JUDGE

hearsay report to police did not violate defendant's due process right in a supervised release revocation hearing — "The district court found that [the victim's] statement was credible because it was made while the event was fresh in her memory and before she had opportunity to recant as not infrequently done by victims of domestic abuse.").